## CENTRAL OF GEORGIA RAILWAY CO. *v.* MOSELY.

1. In charging a jury with respect to the six per cent. and seven per cent. columns in an annuity table, the judge should direct them to use the latter; and in giving instructions with regard to using the mortality and annuity tables, he should call their attention to the decreased capacity to earn money which will result from increasing age and the infirmity incident thereto.
2. An amendment to a petition which merely amplifies and explains more fully the original cause of action is allowable.
3. In the trial of an action for a personal injury, it is competent for the defendant to prove that, shortly after the injury was inflicted, the plaintiff admitted "that the injury was caused by his own fault, and that nobody was in fault but himself."
4. An employee who has the choice of two ways of doing a given piece of work, the one safe and the other dangerous, is under a duty to his employer to select the former ; and if, instead of so doing, he selects the latter, when he knows or ought to know of the danger, he can not recover of the employer for injuries thus sustained, although his conduct in selecting the dangerous way may not have amounted to actual rashness.
5. The foregoing notes cover all of the material questions of law, properly presented by the motion for a new trial, which will probably arise at the next hearing of this case.

Argued February 5, — Decided March 1, 1901.

Action for damages.　Before Judge Nottingham.　City court of Macon.　March 8, 1900.

*Hall & Wimberly* and *R. C. Jordan,* for plaintiff in error.
*John R. Cooper* and *Steed & Ryals,* contra.

LEWIS, J.　Mosely brought suit in the city court of Macon against the Central of Georgia Railway Company, for damages on account of personal injuries alleged to have been sustained through the negligence of the defendant's servants.　The petition alleged that the plaintiff, who was an employee of the defendant, engaged in switching and coupling freight-cars in its yards, was directed by another employee, to whose orders he was subject, to couple a moving freight-car, which had been "kicked" upon a side-track, to a stationary car; that, in obedience to these directions, he went behind the slowly moving car for the purpose of preparing the coupling-pin and getting it in readiness to make the coupling, and while so engaged in the performance of his duty, a switching train and engine ran backwards and struck the moving car behind which he was preparing the coupling, knocking him down and inflicting injuries set forth in the petition.　Negligence is alleged, in the failure of the com-

pany to give the plaintiff warning, through its servants, of the approach of the switching train to the car behind which he was working, and in failing to equip the engine attached to the switching train with proper brakes, so that it could be stopped before petitioner received serious injuries. By an amendment, which was allowed over the objection of counsel for the defendant, the plaintiff alleged that the switching train which caused him to be injured was at the time run at an unlawful rate of speed, and that the defendant was negligent in allowing this train to be so run. The defendant in its answer denied all allegations of negligence on its part, and averred that the injury to plaintiff was the result of one of the ordinary risks incident to his employment, and that he was not himself free from fault. The issue thus formed was tried by a jury, who returned a verdict for the plaintiff for $3,000. The defendant made a motion for a new trial, which was overruled, and it excepted.

1. The court, in instructing the jury as to the use of the mortality and annuity tables, charged as follows: " If you desire to use the annuity table, find the age at which plaintiff was at the time he was injured, and look in the columns to the right, and that will give you what one dollar paid annually during his expectancy would be equivalent to in cash paid now. If you use the table, find out how much he is injured, find how much he will probably fail to receive during the balance of his life, by reason of his injuries, and then reduce that to the cash value." Complaint is made that the court omitted to instruct the jury as to the proper use of the six per cent. and seven per cent. columns in the annuity table, and that nowhere in the charge was attention called to the decreased capacity to earn money which will result from increasing age and the infirmity incident thereto. We think that this point is well taken. It was decided by this court in the case of *Florida R. R. Co.* v. *Burney*, 98 *Ga.* 1, that, in instructions regarding the use of the " 6 per cent." and " 7 per cent." columns in the annuity table, the jury should be restricted to the use of the latter only, for the reason, as stated in the able opinion of Justice Lumpkin, that seven per cent. is the legal rate of interest in this State when none is fixed by contract in writing, and calculations of annuities based upon any other rate would be purely arbitrary. We are also clearly of opinion that the court should have called the attention of the jury to the decrease in earning capacity which naturally results from advancing age, an

instruction which is always applicable in suits for damages on account of injuries alleged to be permanent.

2. There was no error in allowing the amendment to the petition which was offered by the plaintiff. This amendment merely amplified and explained more fully the original cause of action, and was in no legal sense objectionable.

3. Complaint is also made in the motion for a new trial, that the court refused to admit evidence offered by the defendant for the purpose of proving that the plaintiff, on the night of his injury and shortly after he was hurt, admitted that the injury was caused by his own fault, and that nobody was at fault but himself. We think that this evidence should have been allowed to go to the jury as an admission by the plaintiff. True, if the statement were made, it would not be binding against the plaintiff, and he might show as a matter of fact that the injury was not due to his negligence; but at the same time the defendant was entitled to have the evidence go to the jury, that they might consider it for what it was worth. This principle was incidentally involved in the case of *Bohler* v. *Owens*, 60 *Ga.* 185, which was a suit brought to recover the value of property alleged to have been stolen from the plaintiff while a guest at the defendant's hotel. The second headnote of that case is as follows: "Where the guest admitted that the loss occurred by his own fault, the jury should have been left to give such effect to the admission as they thought it deserved, and to settle its signification for themselves. It was error to instruct them that they might consider it in two aspects, first, *as showing* a conscious omission to exercise proper care and diligence, or, secondly, as an admission that, from being affected by drink, he failed in the use of such care and diligence." We quote the following from the opinion of Justice Bleckley on page 188, which we think bears closely upon the case at bar: "When the guest admitted that the loss occurred from his own fault, the opportunity was excellent to contend in argument that the loss proceeded from the negligence of the plaintiff. But the defendant had no right to an intimation from the bench that the evidence might mean so and so. What it meant was for the jury." We conclude, therefore, that the court below erred in refusing to admit the testimony offered by the defendant, tending to show an admission of negligence on the part of the plaintiff.

4. Quite a number of grounds of the motion for a new trial pre-

sent, in one form or another, the question dealt with in the fourth headnote to this opinion.   By qualifying certain written requests to charge, and by giving certain instructions to the jury, the court in effect laid down as the law that an employee having the choice of two methods of doing a given piece of work, the one safe and the other dangerous, could, although he selected the latter with actual knowledge of the danger, or under circumstances charging him with such knowledge, nevertheless recover, unless his conduct in choosing the dangerous way amounted to actual rashness.   In this view we do not concur.   It is a well-settled principle of law that where an employee is confronted with two methods of performing his work, the one safe and the other dangerous, he owes a positive duty to his employer to pursue the safe method, irrespectively of the degree of danger which may be involved in the unsafe method; and any departure from the path of safety which lies before him will prevent his recovery in the event that he is injured.   We therefore hold that the court below erred in so qualifying the rule here laid down as to practically instruct the jury that no negligence short of rashness would defeat a recovery by the plaintiff.

5. There are numerous grounds in the motion for a new trial which we have not deemed it necessary to deal with specifically in this opinion.   The foregoing covers all the material issues of law, properly presented by the motion, which will probably arise at the next hearing.   On account of the close questions of fact presented by the evidence, the errors heretofore pointed out require a reversal of the judgment refusing a new trial.

*Judgment reversed.   All concurring, except Simmons, C. J., absent.*